**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT PIERCE DIVISION**

**CASE NO. 26-cv-14011-EA**

**Mason Trever Toney**,

Plaintiff,

v.

**Treasure Coast Forensic Treatment Center, *et al.***,

Defendants.
_________________________________/

**ORDER DISMISSING COMPLAINT**

**THIS CAUSE** is before the Court on Plaintiff's *pro se* Civil Rights Complaint filed pursuant to 42 U.S.C. § 1983 (the "Complaint"). [ECF No. 1]. Plaintiff is a pretrial detainee who was found to be incompetent to stand trial in Case No. 2020-CF-000862-A-O in the Ninth Judicial Circuit in and for Orange and Osceola Counties, Florida. He was therefore involuntarily committed to the Treasure Coast Forensic Treatment Center ("Treasure Coast") in Indiantown, Florida. In the Complaint, Plaintiff alleges that Treasure Coast and its employees failed to treat an injury that Plaintiff sustained to his pinky finger. [ECF No. 1 p. 14]. For the reasons stated herein, the Complaint is **DISMISSED WITHOUT PREJUDICE** and with leave to amend.

**Background**

The following facts are accepted as true for the purposes of screening the Complaint. *See McCarthy v. City of Cordele, Ga.*, 111 F.4th 1141, 1144 (11th Cir. 2024). During a "recreational period," Plaintiff's "pinky finger was severely jammed by a football thrown by another resident." [ECF No. 1 p. 14]. Plaintiff immediately notified the nurse on the unit. [ECF No. 1 p. 14].

Defendant Dr. Rocambli later examined the finger, determined that it was sprained, and provided Plaintiff with ibuprofen for the pain and swelling. [ECF No. 1 p. 14]. However, Plaintiff alleges that Dr. Rocambli did nothing to straighten the crooked finger, leading Plaintiff to construct his own splint. [ECF No. 1 p. 14]. When Dr. Rocambli returned a few days later, he did nothing more to treat Plaintiff's injury, though he noted that he was "impressed with . . . Plaintiff's make-shift splint." [ECF No. 1 p. 14].

Plaintiff argues that he complained of pain for several weeks and, after nothing was done, demanded to speak to administration. [ECF No. 1 p. 14]. After he spoke to an administrator named Mr. Bien, he was approved for a finger splint and received an x-ray, which came back "negative." [ECF No. 1 p. 14]. Undeterred, Plaintiff requested another x-ray, which he received. [ECF No. 1 p. 14]. However, this x-ray again came back "negative." [ECF No. 1 p. 14]. After multiple visits with doctors and additional pain medication, the medical staff at Treasure Coast ordered an MRI for Plaintiff's pinky finger, which also came back "negative." [ECF No. 1 p. 14].

Despite the multiple "negative" tests, Plaintiff complained of "immobility, disfigurement, swelling, and pain," and requested that he see a "hand specialist." [ECF No. 1 p. 14]. However, after he was not seen by a specialist for a month, Plaintiff filed a grievance addressed to Dr. John Mike, who assured Plaintiff that "the facility was trying to get an appointment scheduled with a specialist." [ECF No. 1 p. 14]. However, after another month had passed with no specialist appointment, Plaintiff appealed Dr. Mike's response. [ECF No. 1 p. 14].

Plaintiff then filed the instant Complaint on December 31, 2025, alleging that Treasure Coast and its employees failed to adequately treat his sprained pinky finger, in violation of the Eighth and Fourteenth Amendments. [ECF No. 1 pp. 3, 11, 14–17]. Plaintiff requests that this Court (1) declare that the defendants' actions were unconstitutional; (2) enter a preliminary and

permanent injunction ordering the defendants to schedule and pay for a hand specialist; (3) award $150,000 in compensatory damages against Treasure Coast and $30,000 against all remaining defendants; (4) award $25,000 in punitive damages against each defendant; (5) order a jury trial; (6) order that the defendants pay the costs of Plaintiff's lawsuit; and (7) award any other relief the Court deems "just, proper, and equitable." [ECF No. 1 p. 18].

**Standard of Review**

A federal court is required to conduct an initial screening of all complaints filed by prisoners proceeding *in forma pauperis*. 28 U.S.C. § 1915(e)(2). During the initial screening, the court must identify any cognizable claims in the complaint and dismiss any claims that are "frivolous" or "malicious," or "fail[] to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B). "A complaint states a claim if its factual allegations permit a 'reasonable inference' that the defendant is liable." *McCarthy v. City of Cordele, Ga.*, 111 F.4th 1141, 1145 (11th Cir. 2024) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). This standard is identical to the standard of review under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997); *see also Iqbal*, 556 U.S. at 678.

Under this standard, the Supreme Court has clarified that a plaintiff need not plead "detailed factual allegations," but must provide "more than . . . unadorned, the-defendant-unlawfully-harmed-me accusation[s]." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

*Pro se* pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). However, *pro se* litigants

must still follow court orders, *see Moon v. Newsome*, 863 F.2d 835, 837–39 (11th Cir. 1989), and procedural rules, including the Federal Rules of Civil Procedure and this Court's Local Rules, *see Roy v. Ivy*, 53 F.4th 1338, 1346 (11th Cir. 2022) (citing *Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007)).

**Legal Analysis**

"Constitutional analysis must begin with 'the language of the instrument'" itself, as the text of the Constitution "offers a 'fixed standard' for ascertaining what our founding document means." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 235 (2022) (first quoting *Gibbons v. Ogden*, 9 Wheat. 1, 186–89, 6 L.Ed. 23 (1824), then quoting 1 J. Story, Commentaries on the Constitution of the United States § 399, p. 383 (1833)).

The Eighth Amendment, as applied to state detainees under the Fourteenth Amendment, *see Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991) (Scalia, J.), prohibits the imposition of "[e]xcessive bail" and "excessive fines," and prohibits the infliction of "cruel and unusual punishments," U.S. Const. amend. VIII. Relevant to the claim currently before the Court is the Amendment's "cruel and unusual punishments" clause because, properly construed, Plaintiff alleges that healthcare professionals employed by Treasure Coast were deliberately indifferent to his medical needs. [ECF No. 1 pp. 3, 7, 14–17].

*The History of the Eighth Amendment*

"The Eighth Amendment's ban against cruel and unusual punishments derives from English law." *Furman v. Georgia*, 408 U.S. 238, 316 (1972) (Marshall, J., concurring). Specifically, the Supreme Court credits a provision of the English Bill of Rights of 1688 as the template for our Constitution's Eighth Amendment. *See State of Louisiana ex rel. Francis v. Resweber*, 329 U.S. 459, 463 (1947) (plurality opinion) (noting that the Eighth Amendment is derived from a provision

of the English Bill of Rights that prohibited "the infliction of unnecessary pain in the execution of the death sentence"). Therefore, English law existing at the time of the Eighth Amendment's ratification governs what is considered "cruel and unusual punishment." *See United States v. Sprague*, 282 U.S. 716, 731 (1931) ("The Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning; where the intention i[s] clear there is no room for construction and no excuse for interpolation or addition" (citations omitted)).

"Punishment, from the time of the Founding through the present day, has always meant a fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime or offense committed by him." *Farmer v. Brennan*, 511 U.S. 825, 859 (1994) (Thomas, J., concurring in judgment) (citing 2 T. Sheridan, A General Dictionary of the English Language (1780)) (alterations adopted and internal quotation marks omitted); *see also* Punishment, Samuel Johnson's Dictionary of the English Language Online (1755), https://johnsonsdictionaryonline.com/index.php (defining "punishment" as "[a]ny infliction or pain imposed in vengeance of a crime").

Historically, such punishment has been labeled "cruel" and "unusual" if it involves "torture" or "unnecessary cruelty," *Wilkerson v. State of Utah*, 99 U.S. 130, 136 (1878), or "a lingering death," *In re Kemmler*, 136 U.S. 436, 447 (1890). Indeed, "cruel" punishments historically involved "something inhuman and barbarous,—something more than the mere extinguishment of life." *In re Kemmler*, 136 U.S. at 447; *see also Weems v. United States*, 217 U.S. 349, 368 (1910) (recognizing that what "constitutes a cruel and unusual punishment" ordinarily implies "something inhuman and barbarous,—torture and the like" (quoting *McDonald v. Commonwealth*, 173 Mass. 322, 328 (1899))); *Gregg v. Georgia*, 428 U.S. 153, 169 (1976) ("The American draftsmen, who

adopted the English phrasing in drafting the Eighth Amendment, were primarily concerned, however, with proscribing 'tortures' and other 'barbarous' methods of punishment" (citation omitted)). Around the turn of the twentieth century, courts likened "cruel" and "unusual" punishments to "burning at the stake, crucifixion[,] breaking on the wheel," *In re Kemmler*, 136 U.S. at 446, live disembowelment and "public dissection," *Wilkerson*, 99 U.S. at 135, and "certain tyrannical acts of the English monarchs," *Weems*, 217 U.S. at 368.

*The Deliberate Indifference Jurisprudence*

Until the 1960s, state and federal governments routinely argued that the Eighth Amendment did not apply to the treatment that prisoners received while incarcerated. *See Helling v. McKinney*, 509 U.S. 25, 40 (1993) (Thomas, J., dissenting); *see also* Malina J. Simard-Halm, *The Unknowns of the Knowledge Requirement: Revisiting the Deliberate Indifference Standard in Prisoner Healthcare*, 115 J. CRIM. L. & CRIMINOLOGY 715, 720 (2025) (citing JUDITH RESNIK, IMPERMISSIBLE PUNISHMENTS: HOW PRISON BECAME A PROBLEM FOR DEMOCRACY (2025)). It was not until 1976 that the Supreme Court, over a dissent by Justice Stevens, expanded the meaning of the Eighth Amendment to cover "deliberate indifference to serious medical needs of prisoners." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *but see Hudson v. McMillian*, 503 U.S. 1, 19–20 (1992) (Thomas, J., dissenting) (noting that "[i]t was not until 1976—185 years after the Eighth Amendment was adopted—that this Court first applied it to a prisoner's complaint about a deprivation suffered in prison.").

The Supreme Court's ruling in *Estelle* has faced heavy scrutiny. *See, e.g.*, *Helling*, 509 U.S. at 39–40 (Thomas, J., dissenting) (noting that the right recognized in *Estelle* was "routinely rejected" by lower courts "for the first 185 years of the" Eighth Amendment's existence). However, the Supreme Court has since constrained *Estelle*. *See Farmer*, 511 U.S. at 861 (Thomas,

J., concurring in judgment) (noting that the Supreme Court adopted the "next highest level of subjective intent" beyond "maliciou[s] and sadisti[c]," requiring that plaintiffs show "actual knowledge of the type sufficient to constitute recklessness in the criminal law").

In *Farmer*, the Supreme Court limited *Estelle*'s reach by holding that, to state an Eighth Amendment deliberate indifference claim for injuries suffered at the hands of prison officials, a prisoner must prove that the official acted with "subjective recklessness" as used in the criminal law. *Farmer*, 511 U.S. at 839–40. (citations omitted). The *Farmer* Court reasoned that this "subjective recklessness" test comported best with "the text of the [Eighth] Amendment as" the Court had interpreted it. *See id.* at 837; *see also Wade v. McDade*, 106 F.4th 1251, 1253 (11th Cir. 2024) (*en banc*) (applying *Farmer*).

However, as explained by Justice Thomas, the majority's rationale in *Farmer* is still inconsistent with the historical application of the Eighth Amendment's cruel and usual punishments clause. *See Farmer*, 511 U.S. at 858–62 (Thomas, J., concurring in the judgment) (recognizing that the "subjective recklessness" standard is a "high[] level of subjective intent," but ultimately concluding that the Eighth Amendment, historically, does not regulate "prison conditions not imposed as part of a sentence"). Indeed, "from the time of the Founding through the present day," punishment "has always meant a 'fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime or offense committed to him.'" *Id.* at 859 (quoting *Helling*, 509 U.S. at 38 (Thomas, J., dissenting)). Accordingly, the conditions of a prisoner's confinement "are not punishment in any recognized sense of the term, *unless* imposed as part of [the prisoner's] sentence." *Id.* (quoting *Helling*, 509 U.S. at 42 (Thomas, J., dissenting)) (emphasis added). Under this framework, it is "judges or juries—but not jailers—[that] impose 'punishment.'" *Id.* (quoting *Helling*, 509 U.S. at 40

(Thomas, J., dissenting)).

*Plaintiff Fails to State a Plausible Claim for Relief Under the "Subjective Recklessness" Standard Outlined in Farmer and McDade*

Applying *Farmer*, the *en banc* Eleventh Circuit recently held that, to state a deliberate indifference claim, a prisoner must show both (1) the existence of an "objectively serious deprivation" and (2) that the defendant "acted with subjective recklessness as used in the criminal law." *McDade*, 106 F.4th at 1253 (quoting *Farmer*, 511 U.S. at 839) (internal quotation marks omitted). However, on the facts as alleged in the Complaint, Plaintiff fails to plausibly demonstrate either that his injury constitutes an "objectively serious" deprivation or that any of the defendants "acted with subjective recklessness as used in the criminal law." *See id.*

First, Plaintiff fails to show that his injury is "objectively serious." *See Farmer*, 511 U.S. at 834; *McDade*, 106 F.4th at 1253. To prove that he has suffered an "objectively serious deprivation," a prisoner must prove that he has been deprived of "the minimal civilized measure of life's necessities." *Hudson*, 503 U.S. at 9 (citing *Wilson*, 475 U.S. at 298). "Because routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society,'" *id.* (*Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)), an injury is objectively serious only if it is one that, "if left unattended, pos[es] a substantial risk of serious harm,'" *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004) (citation omitted). While Plaintiff complains that his pinky finger is "severely disfigured," Plaintiff admits he suffers from only a sprain. [ECF No. 1 p. 14]. Further, Plaintiff was provided with medication for the pain and swelling, a splint for his finger, as well as multiple x-rays and an MRI, all of which confirmed no significant injuries. [ECF No. 1 p. 14]. Plaintiff's pinky sprain does not deprive him of "the minimal civilized measure of life's necessities," *Hudson*, 503 U.S. at 9, nor does it pose "a substantial risk of serious harm," *Brown*, 387 F.3d at 1351. Accordingly, Plaintiff cannot show that his injury is "objectively serious."

Second, to prove "subjective recklessness," the *McDade* court held that a prisoner must show that the defendant "actually knew that his conduct—his own acts or omissions—put the [prisoner] at substantial risk of serious harm." *McDade*, 106 F.4th at 1253 (discussing *Farmer*, 511 U.S. at 839). On the facts alleged, Plaintiff cannot show that Treasure Coast—or any of its employees—acted with subjective recklessness. *See Farmer*, 511 U.S. at 839–40; *McDade*, 106 F.4th at 1253. The Complaint itself indicates that Plaintiff received extensive treatment for his injuries, including pain medication, a splint, two x-rays, "multiple doctors[] visits," and an MRI. [ECF No. 1 p. 14]. Additionally, the Complaint indicates that officials were attempting to schedule Plaintiff an appointment with a hand specialist, though he had not yet been seen at the time he filed the Complaint. [ECF No. 1 p. 14]. These facts do not demonstrate that the Treasure Coast and its employees acted with "subjective recklessness" to Plaintiff's injury. *See Wade*, 106 F.4th at 1253.

Plaintiff has failed to state a plausible claim for relief under the "subjective recklessness" standard outlined in *Farmer* and *McDade*. His deliberate indifference claim therefore fails.

*Plaintiff Fails to State a Plausible Claim for Relief Under the Historical Understanding of the Eighth Amendment*

As explained above, punishment as prescribed by the Eighth Amendment has, dating back to the founding, "meant a fine, penalty, or confinement inflicted upon a person by the authority of the law and the judgment and sentence of a court, for some crime or offense committed by him." *Farmer*, 511 U.S. at 859 (Thomas, J., concurring in the judgment) (citing 2 T. Sheridan, A General Dictionary of the English Language (1780)) (alterations adopted and internal quotation marks omitted); *see also* Punishment, Samuel Johnson's Dictionary of the English Language Online (1755), https://johnsonsdictionaryonline.com/index.php (defining "punishment" as "[a]ny infliction or pain imposed in vengeance of a crime"). Additionally, such punishment has been labeled "cruel" and "unusual" only if it involved "something inhuman and barbarous," such as

"torture," "unnecessary cruelty," or a "lingering death." *In re Kemmler*, 136 U.S. at 447; *Wilkerson*, 99 U.S. at 136. Examples of such "cruel" and "unusual" punishments historically included "burning at the stake, crucifixion[,] breaking on the wheel," *In re Kemmler*, 136 U.S. at 446, live disembowelment and "public dissection," *Wilkerson*, 99 U.S. at 135, and "certain tyrannical acts of the English monarchs," *Weems*, 217 U.S. at 368.

Examining Plaintiff's claims in this historical context and construing all allegations in a light most favorable to him, Plaintiff cannot demonstrate that the defendants' actions either constituted "punishment" or were "cruel and unusual" within the historical meaning of those words.

First, while Plaintiff alleges that the defendants failed to treat his pinky injury, he cannot show that the treatment he received constitutes "punishment" under the Eighth Amendment. As already explained, "judges or juries—but not jailers—impose 'punishment,'" and the treatment that Plaintiff received had no relation to a "judgment and sentence of a court." *Farmer*, 511 U.S at 859 (Thomas, J., concurring in judgment); *see also* Punishment, Samuel Johnson's Dictionary of the English Language Online (1755), https://johnsonsdictionaryonline.com/index.php. Accordingly, the treatment that Plaintiff received for his pinky injury does not meet the definition of "punishment" as historically understood in the context of the Eighth Amendment.

Second, Plaintiff cannot show that the treatment he received for his injury was either "cruel" or "unusual" within the historical meaning of the Eighth Amendment. Plaintiff received extensive treatment for this injury—which included pain medication, a splint, "multiple doctors' visits," and two x-rays and an MRI, all of which came back "negative." [ECF No. 1 p. 14]. These facts, as admitted by Plaintiff, clearly demonstrate that he has not been subjected to either "torture" or "unnecessary cruelty" as historically required to state a claim under the Eighth Amendment. *See, e.g.*, *In re Kemmler*, 136 U.S. at 445–47; *Wilkerson*, 99 U.S. at 135.

"[I]t is not the function of the courts to superintend the treatment and discipline of prisoners in penitentiaries," and the Court will not do so here. *Hudson*, 503 U.S. at 19 (Thomas, J., dissenting). Accordingly, Plaintiff has failed to state a claim upon which relief can be granted because he failed to show that the treatment he received following his pinky injury constituted cruel and unusual punishment under the Eighth Amendment.

**Leave to Amend**

Courts should generally grant *pro se* plaintiffs at least one opportunity to amend a complaint. *See Hall v. Merola*, 67 F.4th 1282, 1295 (11th Cir. 2023) ("[B]efore dismissing a complaint, a district court 'must' give a pro se party 'at least' one chance to amend the complaint if a more carefully drafted complaint might state a claim"). However, a court need not grant leave to amend if such an amendment "could not state a claim" or would otherwise be "futile." *See Silberman v. Miami Dade Transit*, 927 F.3d 1123, 1133 (11th Cir. 2019) (noting that granting leave to amend "is not warranted . . . if a more carefully drafted complaint could not state a claim"); *see also Cornelius v. Bank of Am., NA*, 585 F. Appx. 996, 1000 (11th Cir. 2014) ("While a *pro se* litigant generally must be given at least one opportunity to amend his complaint, a district judge need not allow an amendment where amendment would be futile" (citing *Cockerell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007))).

While any amendment in this case would likely be futile, Plaintiff shall be provided an opportunity file an Amended Complaint in this case.

**Conclusion**

It is therefore **ORDERED** and **ADJUDGED** that:

1. The Complaint [ECF No 1] is **DISMISSED WITHOUT PREJUDICE** and with leave to file an Amended Complaint within fourteen (14) days of the date of this order.

2. The Amended Complaint must bear Case Number 26-cv-14011-EA so that it is filed in this case.

3. Plaintiff's failure to file an Amended Complaint that complies with this Court's order may result in dismissal of this case without prejudice and without further notice.

4. Plaintiff's Motion for Leave to Proceed *in forma pauperis* [ECF No. 3] is **GRANTED**. Plaintiff is permitted to proceed *in forma pauperis* in this case. A debt of $350 must be paid to the Clerk of Court as funds become available in accordance with 28 U.S.C. § 1915(b).

5. The Clerk is directed to send a copy of this Order to Plaintiff at the address listed below and file confirmation on the docket.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 25th day of September 2026.

**ED ARTAU**
**UNITED STATES DISTRICT JUDGE**

Copies Served:

**Mason Trever Toney, *pro se***
8051317
Northeast Florida State Hospital
7487 FL - 121
Macclenny, FL 32063

**Financial Department**
United States District Court,
Southern District of Florida

**Northeast Florida State Hospital**
Detainee Trust Accounting